**Carl SCHIER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–00–00841–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 1, 2001.

---

David S. Barron, Houston, for appellant.
Douglas Howell, III, Bryan, for appellee.

Panel consists of Chief Justice
BRISTER and Justices FOWLER and
SEYMORE.

## OPINION

SEYMORE, Justice.

Appellant, Carl Schier, challenges his conviction for interference with child custody alleging (1) improper exclusion of evidence relevant to his necessity defense; and (2) insufficiency of the evidence to prove proper venue in Brazos County, Texas. We affirm.

### I. BACKGROUND

Appellant and Brenda Hosea Tingley, are the unmarried, natural parents of a daughter, "B.G.S.," who was born on February 17, 1994. On August 17, 1997, a trial court in Brazos County, Texas, entered an order establishing the parent-child relationship. The order established appellant as the father of B.G.S. and named Tingley as the joint managing conservator with the exclusive right to determine B.G.S.'s primary residence. The order further established a visitation scheme allowing appellant possession of B.G.S. on alternating weekends and for forty-two days during B.G.S.'s summer vacation. Appellant picked up B.G.S. on July 13 or 14, 1998 from Tingley's residence for a weekend visitation at appellant's home in Kerrville, Texas. B.G.S. was not returned to Tingley until March 26, 1999, after appellant was arrested for interference with child custody.

Appellant was charged by indictment with the offense of interference with child custody. *See* TEX. PEN.CODE ANN. § 25.03(a)(1) (Vernon 1994). A jury found appellant guilty of the offense charged, and the trial court assessed his punishment at two years' confinement in a state jail facility, probated for five years, a fine of $500, and thirty days' confinement in the Brazos County Jail as a condition of community supervision. Appellant now challenges his conviction, raising two points of error.

### II. ISSUES PRESENTED FOR REVIEW

In his first point of error, appellant contends the trial court reversibly erred in excluding a proffer of his own testimony because it was relevant to establish his necessity defense. In his second point of error, appellant contends the evidence was insufficient to establish venue for prosecution of the offense in Brazos County, Texas.

### III. EXCLUSION OF EVIDENCE

In his first point of error, appellant contends the trial court reversibly erred in excluding as irrelevant and unfairly prejudicial his testimony regarding reasons why he did not timely return B.G.S. to her mother in violation of a court order. *See* TEX.R. EVID. 401; 403. Appellant further contends the trial court's exclusion of the evidence was harmful because the court instructed the jury on the elements of the necessity defense.

Under the relevant provision of Texas Penal Code section 25.03, the elements of the offense of "Interference With Child Custody" include (1) taking or retaining a child younger than 18 years (2) when the defendant knows that his taking or retention violates the express terms of a judgment or order of a court disposing of

the child's custody. TEX. PEN.CODE ANN. § 25.03. The necessity defense is codified in Penal Code section 9.22 and provides that conduct is justified if, *inter alia*, "the actor reasonably believes the conduct is immediately necessary to avoid imminent harm." *See* TEX. PENAL CODE ANN. § 9.22(1) (Vernon 1994).[1] "Imminent" means something that is impending, not pending; something that is on the point of happening, not about to happen. *Smith v. State*, 874 S.W.2d 269, 272–73 (Tex.App.— Houston [14th Dist.] 1994, pet. ref'd). An "imminent harm" occurs when there is an emergency situation and it is "immediately necessary" to avoid that harm, when a split-second decision is required without time to consider the law. *Id.*

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX.R. EVID. 401. In determining whether evidence is relevant, courts look at the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition to be proved. *See Butler v. State*, 936 S.W.2d 453, 458 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd).

■ We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). Where the trial court's evidentiary ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the reviewing court will uphold the trial court's ruling. *Id.* The exclusion of evidence does not result in reversible error unless it affects a substantial right of the accused. *See* TEX. R.APP. P. 44.2(b).

■ Appellant asserts his proffered testimony, which outlined his reasons for refusing to return B.G.S. to her mother, was relevant to the jury's determination of whether he established the necessity defense, that is, whether he had a reasonable belief his conduct was immediately necessary to protect B.G.S. from imminent harm. *See* TEX. PEN.CODE ANN. § 9.22. Appellant complains the trial court erroneously excluded the following testimony (paraphrased):

(1) After Appellant picked up the child for visitation on July 14, 1998, Tingley called him several times when she was "obviously intoxicated" and "incoherent in her train of thought" which "concerned" Appellant.

(2) During his several-year relationship with Tingley, he knew her to have a severe alcohol problem. Appellant had personally witnessed Tingley drive a vehicle after drinking alcohol with his daughter in the car on "four or five occasions."

(3) Appellant further detected from Tingley's demeanor during these telephone calls that she was abusing amphetamine or methamphetamine. She had previously informed him that she abused the drug and that she and her former husband had dealt the narcotic to others. Tingley was employed as a long haul trucker at the time and was "always broke," despite making "quite a bit of money" from her employment.

(4) After July 14, 1998, B.G.S. told Appellant that "she was afraid quite often"

---

1. The other elements of "necessity," not at issue in this case, include (1) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (2) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear. *Id.* § 9.22(2)–(3).

due to physical violence that she witnessed between her mother and her new husband, Murray. B.G.S. told Appellant that she had witnessed these fights on three occasions.

(5) B.G.S. told Appellant that she was afraid to live in the home of her mother and step-father and feared that her mother "wouldn't let her come back to see me."

(6) After picking up the child for visitation the last time, Appellant noticed that she had problems with frequent urination. Appellant, fearing that his daughter had been abused, took B.G.S. to a licensed therapist who began seeing her on a regular basis. The school nurse informed Appellant that the urinary problem could be "indicative of a possible sexual abuse problem."

The environment appellant sought to avoid for his daughter, if accurately portrayed, is deplorable and would make it extremely difficult for any child to endure or survive unharmed. We agree that such conditions (again, assuming the truth thereof) present a substantial likelihood of lasting psychological harm. However, none of the above testimony makes it any more or less likely that there was an emergency situation, "on the point of happening," which required appellant to act *immediately*. *See Smith v. State*, 874 S.W.2d 269, 273 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (finding, in appeal from conviction of interference with child custody, neighbors' testimony of actions by mother during and before April 1984 irrelevant as to any "imminent harm" that might have existed in September of 1984). The harmful events about which appellant testified cannot be *made imminent* through his failure to take legally appropriate action sooner rather than later. Accordingly, we find no abuse of discretion in the trial court's exclusion of this testimony

as the trial court could have properly concluded it was irrelevant to appellant's necessity defense.

We overrule appellant's first point of error.

## IV. VENUE

In his second point of error, appellant contends the evidence was insufficient to establish venue for the offense in Brazos County, Texas. Specifically, appellant contends (1) the State failed to prove by a preponderance of the evidence that the "taking or retention" of B.G.S., in violation of the court's order, occurred in Brazos County, Texas; and that (2) venue was appropriate, therefore, only in Kerr County, Texas.

Appellant argues that (1) he legally picked up B.G.S. from Tingley's home in Bryan, Texas, in July of 1998; (2) he retained her, contrary to the court order, at his home in Kerrville, Kerr County, Texas until his arrest on March 26, 1999; and (3) the State failed to present any evidence the offense occurred in Brazos County, Texas as alleged in the indictment.

Because there is no specific venue statute in the Texas Code of Criminal Procedure for interference with child custody, we look to the general venue statute to determine where appellant should have been prosecuted. *See* TEX.CODE CRIM. PROC. ANN. art. 13.18 (Vernon 1977) ("If venue is not specifically stated, the proper county for the prosecution of offenses is that in which the offense was committed."); *Wood v. State*, 573 S.W.2d 207, 210–11 (Tex.Crim.App.1978) (holding that, under Article 13.18, when elements of an offense are committed in more than one county, and the terms of the special venue provisions are inapplicable, venue may be established in any of those counties). Thus, to prove that venue was proper in Brazos County, the State had to prove that at

least one of the elements of interference with child custody occurred within the boundaries of Brazos County. As discussed above, a person commits an offense when he (1) takes or retains a child younger than eighteen years old; and (2) knows that his taking or retention violates the express terms of a judgment or order of a court disposing of the child's custody. *See* TEX. PEN.CODE ANN. § 25.03.

At the close of the State's evidence, appellant's counsel moved for an instructed verdict on the ground that the State failed to prove venue was proper in Brazos County. During an exchange with the trial court, appellant's trial counsel admitted there was evidence showing that the offense—specifically the retention—was in progress on August 18, 1998 when appellant appeared in a Brazos County court for a hearing on appellant's writ of attachment. Moreover, during the State's cross-examination, appellant admitted (1) he and B.G.S. were in Brazos County on August 18, 1998 for the hearing on the writ and he did not return B.G.S. to her mother that day; and (2) he was aware of the August 1997 order providing that B.G.S.'s mother had the exclusive right to determine where B.G.S. would live and providing that appellant and Tingley would be joint managing conservators of B.G.S.

Accordingly, we find sufficient evidence that appellant committed at least part of the offense of interference with child custody in Brazos County, Texas, by retaining B.G.S. in Brazos County in violation of the express terms of the August 1997 order disposing of B.G.S.'s custody.

We overrule appellant's second point of error.

We affirm the judgment of the trial court.